UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| INDIANA MHC, LP, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00041-JMS-KMB |
| | ) | |
| HARRISON COUNTY REGIONAL SEWER DISTRICT, | ) | |
| DARIN DUNCAN, TOM TUCKER, CHARLIE | ) | |
| CRAWFORD, GARY DAVIS, DANIAL LEE, | ) | |
| TONY COMBS, JOHN KINTNER, BILL BYRD, and | ) | |
| MATT BECKMAN, | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

Plaintiff Indiana MHC, LP ("Indiana MHC") owns Berkshire Pointe Mobile Home Park ("Berkshire Pointe") and receives wastewater services from Defendant Harrison County Regional Sewer District (the "District"). After a billing dispute occurred, Indiana MHC filed suit claiming that the District and Defendants Darin Duncan, Tom Tucker, Charlie Crawford, Gary Davis, Danial Lee, Tony Combs, John Kintner, Bill Byrd, and Matt Beckman (collectively, the "Individual Defendants") violated Indiana MHC's constitutional rights by adopting an ordinance which permitted the charges in question. [Filing No. 1.] Presently before the Court is Defendants' Motion to Dismiss for lack of jurisdiction, [Filing No. 35], which is ripe for the Court's review.

## I.
### STANDARD OF REVIEW

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Jurisdiction is the "power to decide" and must be conferred upon the federal courts. *In re Chicago, R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).

When deciding a motion to dismiss under Rule 12(b)(1), the Court accepts the allegations in the plaintiff's complaint as true and draws all reasonable inferences in the plaintiff's favor. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). However, when faced with a challenge to its subject-matter jurisdiction, the Court may look beyond the complaint and review whatever evidence has been submitted on the issue to determine whether, in fact, subject-matter jurisdiction exists. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). The burden is on the plaintiff to prove by a preponderance of the evidence that subject matter jurisdiction exists for his or her claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

## II.
### BACKGROUND

The following factual allegations are set forth in Indiana MHC's Complaint and the attached exhibits, [Filing No. 1], which the Court must accept as true at this time.

### A.  The Plant and the Collection System

Indiana MHC owns Berkshire Pointe, which provides "affordable housing to low-income residents" in New Salisbury, Indiana. [Filing No. 1 at 1.] The District provides wastewater services to Berkshire Pointe and its residents. [Filing No. 1 at 1.] Berkshire Pointe previously owned and operated a wastewater treatment plant (the "Plant") on its grounds, which was transferred to the District in April 2008. [Filing No. 1 at 4-6.] Berkshire Pointe also has a private wastewater collection system (the "Collection System") on its grounds. [Filing No. 1 at 6.] The Collection System utilizes a "master meter," which jointly measures the utility usage of multiple users with the same meter. [Filing No. 1 at 13; Filing No. 1-5 at 1; Filing No. 1-5 at 34.]

Before the Plant's transfer, the District was "aware of various issues with the Plant and private collection systems that collect wastewater flowing to the Plant." [Filing No. 1 at 4.] One of these issues is groundwater infiltration or "rainwater that gets into the sewer system quickly and

easily," [Filing No. 1-5 at 3], which "affect[s] the volume of wastewater treated by the Plant," [Filing No. 1 at 4].  In February 2020, the District informed Indiana MHC that the Plant "continues to be plagued by excessive and extreme infiltration during rain events" and requested permission to perform "smoke testing and televising work" on the Collection System to determine the source of the infiltration.  [Filing No. 1 at 5.]  Indiana MHC permitted the District to perform the requested inspection work on the Collection System, but the inspection did not reveal the source of the Plant's water issues.  [Filing No. 1 at 5.]

### B.  The Infiltration Surcharge Dispute

Starting in November 2021, the District began invoicing Indiana MHC for "additional flow [into the Plant] generated by [the Collection System] due to wet weather inflow and infiltration" (the "Infiltration Surcharges").  [Filing No. 1 at 6.]  The District invoiced Indiana MHC for Infiltration Surcharges in the following amounts:

- October 2021 – $2,460.14 for 232,308 gallons of inflow, [Filing No. 1-1];

- November 2021 – $1361.30 for 128,546 gallons of inflow, [Filing No. 1-2]; and

- December 2021 – $1506.30 for 142,238 gallons of inflow, [Filing No. 1-4 at 1].

On December 10, 2021, Indiana MHC informed the District that it disputed these charges, stating that: "(a) [it] has never been charged [Infiltration Surcharges,] (b) the District has repeatedly admitted it does not know the source of infiltration, (c) no evidence has ever been provided showing the measurement of any specific volume of infiltration that is solely attributable to Berkshire Pointe, and (d) no legal authority was provided for [the Infiltration Surcharges.]"  [Filing No. 1-3 at 2.]  Pursuant to the Indiana Access to Public Records Act ("APRA"), Ind. Code § 5-14-3-1 *et. seq.,* Indiana MHC requested "all information and documentation supporting the District's

demand for payment . . . based upon infiltration solely arising from Berkshire Pointe." [Filing No. 1-3 at 2-3.]

### C.  The Ordinance

In response to Indiana MHC's APRA request, the District identified District Ordinance 2019-01 (the "Ordinance") as the basis for its authority to impose the Infiltration Surcharges. [Filing No. 1-5 at 1.]   The Ordinance amends District Ordinance No. 2014-01 (the "Rate Ordinance"), which establishes the "rates and charges . . . collected from the owners of each and every lot, parcel of real estate or building that is connected with the District's sanitary system or otherwise discharges sanitary sewage, industrial wastes, water or other liquids, either directly or indirectly, into the sanitary sewage system of [the District.]" [Filing No. 1-5 at 23; Filing No. 1-5 at 34.]

The Ordinance provides as follows:

WHEREAS, on April 16, 2014, the [District] passed [the Rate Ordinance] establishing rates and charges for the [District's] sewage treatment system.

WHEREAS, [the Rate Ordinance] and its related amendments previously adopted did not account for situations where there is a master meter that services multiple users.

WHEREAS, Indiana Code 13-26-11-8 provides that just and equitable rates and charges are to be charged by the [District].

WHEREAS, in order for the [District] to charge just and equitable rates, an amendment is necessary to its rate ordinance to take into account circumstances where there is one master meter that provides service to multiple users.

****

WHEREAS, the [District] now finds that the existing rates and charges for the use of services rendered by the [District] are not fair and equitable for those customers on a master meter and that this amendment is necessary to provide just and equitable rates to all its customers and bring its rates in accordance with Indiana law.

NOW, THEREFORE, BE IT ORDAINED BY [THE DISTRICT] AS FOLLOWS:

That a new subsection (f) be added to Section 3 of the [Rates Ordinance] and shall read as follow[s]:

(f) Master Meter Users (e.g., Mobile Home Parks): In the instance where a master meter is utilized to provide service to multiple tenants, the [District] may choose to bill the master meter user based on another method selected by the [District] in lieu of utilizing the master meter readings by calculating the flow into the [District] treatment plant or collection system, whichever the case may be. The [District] may choose to utilize existing flow meter data or install new flow meters (if necessary) to calculate the actual flows being treated by the [District] from the master meter user's development.

[Filing No. 1-5 at 34.]

Indiana MHC replied that the Ordinance did not authorize the District to assess Infiltration Surcharges and that the District's practice of only assessing Infiltration Surcharges against it, and no other customer, was discriminatory. [Filing No. 1-6 at 1-3.] The District did not acknowledge Indiana MHC's reply but did issue two additional invoices for Infiltration Surcharges – $5,012.30 for January 2022 and $10,865.51 for February 2022. [Filing No. 1 at 10; Filing No. 1-7; Filing No. 1-8.]

### D. This Lawsuit

On March 25, 2022, Indiana MHC filed suit against the District and the Individual Defendants, who are the members of the District's Board of Trustees (the "Board"), asserting claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment and under the Indiana Declaratory Judgment Act, Ind. Code § 34-14-1-1 *et. seq.* [Filing No. 1 at 12-18.] Indiana MHC alleges that Defendants "failed to comply with the statutory procedure required for regional sewer districts to impose rates and charges" when adopting and enforcing the Ordinance in three ways: (1) failing to provide "proper notice" that Infiltration Surcharges would be assessed; (2) failing to provide a meaningful opportunity to respond or opportunity to be heard regarding the assessment

of Infiltration Surcharges; and (3) unlawfully targeting Berkshire Pointe, "Master Meter Users," and "Mobile Home Parks."[1]  [Filing No. 1 at 12-18.]

Defendants have filed a Motion to Dismiss, which seeks dismissal of each of Indiana MHC's claims pursuant to Fed. R. Civ. P. 12(b)(1).  [Filing No. 35.]

### III.
#### DISCUSSION

Defendants argue that dismissal is appropriate for two reasons.  [Filing No. 36]  First, Defendants argue that the Individual Defendants are entitled to legislative immunity.  [Filing No. 36 at 6-9.]  Additionally, Defendants argue that dismissal is appropriate because the issues raised in Indiana MHC's Complaint are now moot.  [Filing No. 36 at 4-6.]  The Court addresses each issue in turn.

### A.  Legislative Immunity

Defendants argue that dismissal as to the Individual Defendants is appropriate because they have absolute immunity for all liability for their legislative activities.  [Filing No. 36 at 6 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998)).]  Defendants argue that at "the heart of the allegations against the [Individual Defendants] is they are members of a Board that adopted an illegal and unconstitutional ordinance that allowed [Infiltration Surcharges] to be imposed against [Indiana MHC]," and these actions "clearly fall within the parameters of legislative immunity" which immunizes them from Indiana MHC's claims.  [Filing No. 36 at 8.]  Finally, Defendants argue that the Complaint contains "no specific allegations" that the Individual Defendants "played

---

[1] While Indiana MHC's Complaint lacks specificity, the Court notes that the relevant Indiana "statutory procedure" related to the imposition of charges by regional sewer districts is found at Ind. Code § 13-26-11-8 *et. seq.*

any specific role in enforcing the Ordinance" and the "evidence attached to the Complaint establishes the contrary." [Filing No. 36 at 8-9.]

Indiana MHC responds that the Individual Defendants are not entitled to legislative immunity for adopting or enforcing the Ordinance. [Filing No. 42 at 7-12.] Specifically, Indiana MHC argues that courts have denied the application of legislative immunity when "the act relates to a specific individual." [Filing No. 42 at 9.] Indiana MHC contends that the Ordinance "does not apply equally to all persons" and "specifically targets 'Master Meter Users (*e.g.,* Mobile Home Parks)'" and therefore legislative immunity should not apply. [Filing No. 42 at 9.] Finally, Indiana MHC responds that Defendants "do not provide any argument—let alone legal authority—that they are entitled to legislative immunity for the enforcement of [the Ordinance] and assessment of the Infiltration Surcharges," which it contends amounts to waiver. [Filing No. 42 at 10-11.]

Defendants reply that "it is indisputable that their act in passing an ordinance was legislative in nature, and thus [the Individual Defendants] are entitled to legislative immunity." [Filing No. 43 at 8.] Defendants further argue that even if Indiana MHC is the "only one impacted by this Ordinance, that fact alone does not equate to the Ordinance having no prospective implications that reach beyond [Indiana MHC,] as other Master Meter users in the future could be impacted." [Filing No. 43 at 7.] Additionally, Defendants argue that the Individual Defendants did not enforce the Ordinance because "the issuance or sending of the five invoices was done by Cindy Tolliver as plainly represented in the five invoices [which Indiana MHC] made exhibits to its Complaint when referencing the issuance of invoices—not by the individually named Defendants." [Filing No. 43 at 9.] Defendants argue that the invoices "cannot serve as the basis of [the Individual Defendants'] liability" and the invoices "do[] not negate dismissal due to legislative immunity." [Filing No. 43 at 9.] Even if the Individual Defendants sent the invoices

to Indiana MHC, Defendants argue that the alleged assessment of surcharges is an act of promulgating the Ordinance, as opposed to enforcement, entitling the Individual Defendants to legislative immunity.  [Filing No. 43 at 10-11.]

It is well established that an official sued for conducting a legislative act is protected by absolute legislative immunity.  *Bogan*, 523 U.S. at 48 (noting that "[t]he principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law").  However, legislators are not immune for every official action that they undertake.  *Id.*  To determine if a legislator is entitled to absolute immunity, the Court must determine if the legislator was performing a legislative function or was performing an executive or administrative function.  *Id.* at 45.  In making this determination, the Court considers whether the official action was: (1) legislative in form, in that it followed a traditional legislative process; and (2) legislative in substance, in that it reflects discretionary policymaking with prospective implications.  *Id.; Bagley v. Blagojevich*, 646 F.3d 378, 385 (7th Cir. 2011).

With respect to the legislative action at issue in this case, the Seventh Circuit has explained that "an ordinance adopted through the legislative process, and having the force of law, is covered by legislative immunity no matter the motives of those who proposed, voted for, or otherwise supported the proposal." *Benedix v. Vill. of Hanover Park, Ill.*, 677 F.3d 317, 318 (7th Cir. 2012). Here, the parties do not dispute that the Individual Defendants adopted the Ordinance as part of their roles as members of the District's Board or that the Ordinance had the force of law.  [Filing No. 36; Filing No. 42; Filing No. 43.]   Accordingly, the adoption of the Ordinance was quintessentially legislative in form and function, and the Individual Defendants are entitled to absolute legislative immunity.  *Id.*; *Biblia Abierta v. Banks*, 129 F.3d 899, 904 (7th Cir. 1997).

While Indiana MHC points to *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 696 (7th Cir. 2004), for the proposition that legislative immunity does not attach when a legislative act only impacts a specific individual, this argument is misplaced.  Unlike the conduct at issue in *Baird*, the Ordinance was not directed at a specific person but instead applied to all "Master Meter Users" and "Mobile Home Parks."  [Filing No. 1-5 at 34.]  Moreover, the Court notes that *Baird* does not relate to a legislative act but rather concerns an administrative decision to terminate a school superintendent's employment.  *Baird*, 389 F.3d at 696 (noting that the termination of an employee is an administrative act).  The Seventh Circuit has "repeatedly held" that the availability of immunity turns on the nature of the act, not upon "the number of people that a law happens to affect at the time of its passage."  *Biblia Abierta,* 129 F.3d at 904; *see also Strauss v. City of Chicago*, 346 F. Supp. 3d 1193, 1205 (N.D. Ill. 2018).  Put simply, the fact that an "ordinances' most immediate impact falls on a limited group of people" does not alone render a "neutral, prospective rule[]" outside the scope of legislative immunity.  *Biblia Abierta,* 129 F.3d at 904.  Accordingly, the Ordinance's limited impact does not strip the Individual Defendants of their immunity for actions in promulgating the Ordinance.

Additionally, Indiana MHC attempts to distinguish the Individual Defendants' enactment of the Ordinance from their alleged enforcement of the Ordinance.  However, this argument is flawed for two reasons.  First, Indiana MHC does not include any specific factual allegations in its Complaint regarding enforcement actions undertaken by the Individual Defendants.  [*See* Filing No. 1.]  As the exhibits to Indiana MHC's Complaint make clear, the invoices at issue were not sent by the Individual Defendants but, instead, were issued by Cindy Toliver on behalf of the District.  [Filing No. 1-1; Filing No. 1-2; Filing No. 1-3 at 4-5; Filing No. 1-4.]  In fact, the

Complaint does not include any factual allegations regarding the Individual Defendants at all outside of their status as members of the Board.  [*See, e.g.*, Filing No. 1 at 3-4.]

But more fundamentally, this distinction was rejected by the Seventh Circuit in *Reeder v. Madigan*, 780 F.3d 799, 804 (7th Cir. 2015).  In *Reeder*, the Seventh Circuit explained that when an individual acts as both a legislator and prosecutor, they are not entitled to legislative immunity for their prosecutorial actions.  *Id.* (citing *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980)).  However, when "'a legislative body adopts a rule . . . the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing the rule as a part of their official duties.'"  *Id.* at 805 (quoting *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 631 (1st Cir. 1995)).

Assuming *arguendo* that the Individual Defendants played some role in enforcing the Ordinance, they would similarly be entitled to legislative immunity because the alleged enforcement of the Ordinance "was nothing like a prosecution."  *Id.; see also File v. Martin*, 33 F.4th 385, 390 (7th Cir. 2022) (distinguishing the promulgation of attorney disciplinary rules from the prosecution of attorney misconduct via disciplinary proceedings).  Here, the alleged enforcement of the Ordinance involved sending invoices for usage charges as established by the Ordinance.  [Filing No. 1-1; Filing No. 1-2; Filing No. 1-3 at 4-5; Filing No. 1-4.]  This conduct is clearly distinguishable from actions undertaken "in preparation for the initiation of a prosecution or for judicial proceedings."[2]  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Because the alleged enforcement of the Ordinance involved the simple act of carrying out the Board's

---

[2] The Court notes that if the Individual Defendants had acted in a prosecutorial capacity, they would be entitled to "absolute immunity from damages liability" but not from Section 1983 injunctive suits because "they are the state officers who are threatening to enforce and who are enforcing the law."  *Consumers Union*, 446 U.S. at 736; *see also Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 565 (7th Cir. 2022).

enactment of the Ordinance, the Court finds no reason to conclude that these acts are entitled to lesser protection than the promulgation of the Ordinance.

In sum, the crux of Indiana MHC's allegations against the Individual Defendants is that they allegedly enacted an unconstitutional ordinance. [Filing No. 1.] However, the Individual Defendants are entitled to absolute immunity for their legislative activities. *Bogan*, 523 U.S. 48. Accordingly, Indiana MHC's claims against the Individual Defendants are **DISMISSED**.

### B. Mootness

Defendants argue that dismissal of all of Indiana MHC's claims is appropriate because the Ordinance has been repealed and "'[t]he general rule in this circuit is that the repeal of a challenged ordinance – or an amendment to the ordinance that rectifies the ordinance's alleged defects – renders a case moot, unless there is evidence creating a reasonable expectation that the [government actor] will reenact the ordinance or one substantially similar.'" [Filing No. 36 at 4 (quoting *Consolidated Paving v. County of Peoria, Illinois*, 2012 WL 13001935 (C.D. Ill. August 28, 2012) (internal quote omitted)).] In support of their Motion, Defendants attach the minutes from the District's September 16, 2022 Board meeting (the "Board Meeting") and an affidavit from Christopher Byrd, the District's attorney. [Filing No. 36-1 at 1.] Defendants argue that if the governmental action repealing a statute "appears genuine, then the federal court is not to second-guess the governmental action" and that an act is not genuine "when there is evidence indicating the defendant plans to or has already reverted to engaging in the challenged behavior." [Filing No. 36 at 5.] Here, Defendants argue that the "only claimed monetary damage [Indiana MHC] sustained was [the Infiltration Surcharges,] which [it] never paid and now have been waived by the District" and the Ordinance has now been repealed. [Filing No. 36 at 5-6.] Defendants further argue that no evidence suggests that the District's repeal of the Ordinance was not genuine or that

the District will "engage in the challenged behavior in the future." [Filing No. 36 at 6.] Accordingly, Defendants argue that the relief that Indiana MHC seeks has been mooted.

Indiana MHC responds that Defendants have not established that the Ordinance was repealed or that the District will not take similar action in the future.[3] [Filing No. 42 at 7.] Instead, Indiana MHC argues that "Defendants' extrinsic evidence makes clear that even if [the Ordinance] is repealed, the District's 'goal' is to enact a new ordinance to 'replace' [the Ordinance.]" [Filing No. 42 at 7 (quoting Filing No. 36-1 at 5).] Additionally, Indiana MHC argues that the Court may consider extrinsic evidence in considering Rule 12(b)(1) motion, but "it is well-established that argument of counsel is not evidence" and "Defendants make no claim that the new, replacement ordinance will not (a) 'cover' [it] or (b) seek to impose surcharges for infiltration issues on [it]" and, therefore, "there is evidence creating a reasonable expectation that [the District] will reenact the ordinance or one substantially similar." [Filing No. 42 at 7 (quoting Filing No. 36-1 at 5).] Therefore, Indiana MHC argues that this case is not moot and dismissal is not appropriate.

Defendants reply that their "tendered testimony which states the challenged ordinance was repealed and the disputed surcharges have been waived renders the case moot." [Filing No. 43 at 4.] Defendants further argue that there is "no evidence before the Court suggesting Defendants are planning to revive the challenged provision of [the Ordinance] and it is improper for the Court to presume, as [Indiana MHC] urges, that the Defendants are waiting for dismissal of this action to revive the challenged repealed provisions." [Filing No. 43 at 3.] Defendants further argue that

---

[3] Additionally, Indiana MHC argues that it should be permitted to conduct discovery "on matters related to Defendants' mootness argument." [Filing No. 42 at 13.] The Court notes that discovery in this case has not been stayed and that Magistrate Judge Kellie M. Barr has granted multiple Motions to Compel in favor of Indiana MHC during the pendency of the present motion, [Filing No. 47; Filing No. 48]. Accordingly, the Court finds that additional discovery is unnecessary to resolve the issues before the Court, and Indiana MHC's request is **DENIED**.

their "stated goal of replacing the challenged Ordinance by the end of the year does not constitute 'evidence creating a reasonable expectation that [the District] will reenact the Ordinance or one substantially similar'" and a "goal of replacing the challenged Ordinance should be distinguished from affirmative evidence (which the exception from the general rule requires) that Defendants plan to replace it with the exact same or substantially similar ordinance." [Filing No. 43 at 4.] Finally, Defendants argue that "should Defendants act in bad faith and reenact the same Ordinance following the Court's dismissal of this lawsuit, [Indiana MHC] has the ability to challenge it" but the Court should not "waste judicial resources presiding over and the parties should not waste legal fees litigating this matter where it has been rendered moot." [Filing No. 43 at 4.]

"Article III limits federal court jurisdiction to live cases and controversies and an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (cleaned up). "A question of mootness arises when . . . a challenged ordinance is repealed during the pendency of litigation, and a plaintiff seeks only prospective relief." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003). In these situations, "there is no longer an ongoing controversy: the source of the plaintiff's prospective injury has been removed, and there is no 'effectual relief whatever' that the court can order." *Ozinga v. Price,* 855 F.3d 730, 734 (7th Cir. 2017) (internal quotation omitted). The party alleging mootness bears the burden of persuasion. *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004).

As a general rule, the simple fact that a defendant voluntarily ceased challenged conduct does not necessarily render a case moot. *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013) ("We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."); *Fed'n of Advert. Indus. Representatives*, 326 F.3d at 929 (noting

"the general principle that a defendant's voluntarily cessation of challenged conduct will not render a case moot because the defendant remains free to return to his old ways").  However, the Seventh Circuit has explained that "if a government actor sincerely self-corrects the practice at issue, a court will give this effort weight in its mootness determination." *Freedom From Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038, 1050 (7th Cir. 2018).  Only in cases where "there is evidence that the repeal was not genuine has the Court refused to hold the case moot." *Id.* at 930.  Examples of extrinsic evidence defeating mootness include situations where the defendants express a desire to reenact the challenged conduct or where the defendant makes equivocating assurances that "changes *should* be adopted permanently because of the *apparent* consensus." *Freedom From Religion Found.,* 885 F.3d at 1051 (emphasis original); *see also United States v. Sanchez-Gomez,* 138 S. Ct. 1532, 1537 n.* (2018) (finding case not mooted where defendant announced that it "intends to reinstate its policy once it is no longer bound by the decision of the Court of Appeals").

The Court finds the Seventh Circuit's holdings in *Wisconsin Right to Life,* 366 F.3d at 491, and *Speech First,* 968 F.3d at 646, instructive to the present case.  In *Wisconsin Right to Life*, the Seventh Circuit found that a suit against the members of the Wisconsin State Elections Board was rendered moot when the Board made "private and public assurances" that the challenged statute would not be enforced, including a letter and a website disclaimer.  *Wisconsin Right to Life,* 366 F.3d at 491 (finding that "there is no behavior to enjoin").  Similarly, the Seventh Circuit held in *Speech First* that a challenge to a university policy was mooted by the university's repeal of the challenged policy.  *Speech First,* 968 F.3d at 646.  Specifically, the Seventh Circuit found that the policy was not "a threat to students past, present, or future" because "[t]here is no evidence in the record indicating the University ever enforced the policy," "the University affirmatively

represented . . . that it does not intend to reenact the provision," and "the University undertook a formal amendment process." *Id.*

As in *Wisconsin Right to Life* and *Speech First*, the Court finds that the present case has been mooted by the District's repeal of the Ordinance and waiver of the Infiltration Surcharges. In support of their mootness argument, Defendants point to the minutes from the Board Meeting and an affidavit from the District's attorney, Mr. Byrd.[4]   [Filing No. 36-1.]   The minutes state as follows:

**7. Berkshire MHP Billings:**

a. A motion was made by Darin Duncan, second by Tony Combs, to waive all infiltration surcharges and a new ordinance to be drafted to replace [the Ordinance] with the goal of having a new ordinance in place by the end of the year. Motion approved unanimously.

[Filing No. 36-1 at 5.] While the minutes from the Board Meeting are less than clear, Mr. Byrd's affidavit establishes that the Board approved three separate legislative actions during the Board Meeting: (1) repealing the Ordinance; (2) waiving the charges issued to Indiana MHC – both of which have already occurred; and (3) agreeing to replace the Ordinance with a new sewer ordinance – which will occur at some point in the future. [Filing No. 36-1 at 1.]

---

[4] Additionally, Indiana MHC seemingly objects to the inclusion of Mr. Byrd's affidavit as part of Defendants' extrinsic evidence because "it is well-established that argument of counsel is not evidence." [Filing No. 42 at 6.] Here, the record demonstrates that Mr. Byrd acts as the District's attorney and was present during the Board Meeting. [*See* Filing No. 36-1 at 3.] As a general rule, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Ind. R. of Prof. Cond., R. 3.7. Often referred to as the Advocate-Witness Rule, this rule "articulates the professional impropriety of assuming the dual role of advocate and witness in a single proceeding [and] has deep roots in American law." *United States v. Jones*, 600 F.3d 847, 862 (7th Cir. 2010) (citations omitted). While Mr. Byrd acts as the District's attorney, he has not appeared as the District's attorney *in this case.* Accordingly, the Court does not find that Mr. Byrd's affidavit presents "the danger that an attorney might not be a fully objective witness [or] the risk that a jury could confuse the two roles when deciding how much weight to accord to a testifying attorney's statements." *Id.* Therefore, Mr. Byrd is able to testify regarding his personal knowledge of what occurred during the Board Meeting.

As the Seventh Circuit has explained, "the repeal of a challenged statute is one of those events that makes it absolutely clear that the allegedly wrongful behavior . . . could not reasonably be expected to recur." *Fed'n of Advert. Indus. Representatives*, 326 F.3d at 931 (citing *Citizens for Responsible Gov't v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).  Here, the District has publicly repealed the Ordinance via a unanimous vote of all of the Board members present during the Board Meeting.  [Filing No. 36-1 at 5.]  Moreover, the Board rescinded any outstanding liability issued under the Ordinance.  [Filing No. 36-1 at 1-5.]  Because Indiana MHC has not paid any Infiltration Surcharges and the District has repealed its claimed basis to impose the future Infiltration Surcharges, the Court finds the Ordinance no longer represents "a threat" to Indiana MHC.  *Speech First*, 968 F.3d at 646.  Accordingly, any claim for relief based upon the promulgation of the Ordinance is now moot.

While Indiana MHC asks the Court to speculate that the District may reenact the Ordinance or enact a new one that is substantially similar, there is no evidence from which the Court can infer an intent to resume the challenged conduct.  Because the District is a public entity, [Filing No. 1 at 3], it receives the presumption its actions were undertaken in good faith.  *See Freedom From Religion Found.,* 885 F.3d at 1051.  As the Seventh Circuit has explained "[c]omity, moreover— the respect or *politesse* that one government owes another, and thus that the federal government owes state and local governments—requires us to give some credence to the solemn undertakings of local officials." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006).  "A contrary conclusion would put this court in the position of presuming [the District] has acted in bad faith—harboring hidden motives to reenact the [Ordinance] after [the Court has] dismissed the case—something [courts] ordinarily do not presume." *Fed'n of Advert. Indus.*

*Representatives*, 326 F.3d at 929.  Absent evidence of an intent to resume the challenged conduct, the Court must find that Indiana MHC's claims are moot.  *Speech First,* 968 F.3d at 647.

Although Indiana MHC argues that the District's stated goal of enacting a new "all encompassing" sewer ordinance at some point in the future is evidence that the District intends to repeat the conduct at issue in this lawsuit, [Filing No. 42 at 14], the Court disagrees.  This argument might have some surface-level appeal, but the Court notes that Indiana MHC does not bring claims challenging the District's authority to impose charges for infiltration issues or challenging the District's jurisdiction to impose charges upon it.  [*See* Filing No. 1.]  Instead, Indiana MHC specifically alleges that Defendants "fail[ed] to comply with the statutory procedure required for regional sewer districts to impose rates and charges" when adopting the Ordinance, and that the Ordinance "arbitrarily categorized" the District's customers.  [Filing No. 1 at 13-15.]  Whether or not Defendants "enact a substantial [new] ordinance" or "continue their previous conduct of assessing Infiltration Surcharges" is beside the point and outside of the scope of the claims alleged in Indiana MHC's Complaint.  [Filing No. 42 at 14.]  If anything, this stated goal suggests that the District has engaged in a genuine act of self-correction in reaction to Indiana MHC's claims, to which the Court must give credence.

In short, based upon the record before the Court, Indiana MHC has succeeded in disputing the Infiltration Surcharges issued under the Ordinance, and, therefore, there is no live "case or controversy" currently before this Court.  Accordingly, Indiana MHC's claims against the District are **DISMISSED**.

## IV.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, [35], is **GRANTED**.  Indiana

MHC's claims against the Individual Defendants are **DISMISSED WITH PREJUDICE** and

Indiana MHC's claims against the District are **DISMISSED WITHOUT PREJUDICE**.[5]   Final

judgment shall enter accordingly.

Date: 5/10/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**

---

[5]As a general rule, dismissals for lack of subject matter jurisdiction are without prejudice.  *See Chattanoga Mfg., Inc. v. Nike, Inc*., 301 F.3d 789, 795–96 (7th Cir. 2002)* ("Thus, although the current dispute between the parties is moot, a future one is possible.  If a dispute ripens between the parties, [the plaintiff] should have the opportunity to litigate its claims.").  However, dismissals on the basis of absolute immunity are ordinarily with prejudice.  *See Koorsen v. Dolehanty*, 401 Fed. App'x. 119, 120 (7th Cir. 2010).